Wanamaker, J.
This is not an action for false arrest or malicious prosecution. It is an action for false imprisonment. What is false imprisonment?
False imprisonment is a legal term and means just what the words themselves imply, a wrongful or unlawful detention or restraint of one’s liberty. The question always is, Was he deprived of his liberty unlawfully?
Under the facts of the case he may have been entitled to his liberty. One may be acquitted upon the merits of the case or discharged upon some question of law, but that does not, in and of itself, constitute false imprisonment.
Under the law, Was he entitled to his liberty as against the act of the person charged with false imprisonment? This is the question to be determined by a court under due process of law.
No system of jurisprudence has yet been invented that will be infallible when administered by fallible *175 man. Mistake and injustice will occur to the individual under any judicial system, in the application of either civil or criminal jurisprudence.
The sole question here is, Was Drolesbaugh legally deprived of his liberty by Brinkman? The points in dispute are, therefore, purely legal, and do not involve probable cause or malice. The mental attitude of Brinkman, the game warden, is wholly irrelevant.
It is admitted that the justice of the peace had jurisdiction of the class of offenses sought to be charged against Drolesbaugh. That there was a bona fide attempt to charge an offense under the laws of Ohio against Drolesbaugh is not denied. Neither is it claimed that there was any unnecessary force used in the execution of the process.
The whole contention in this case is based upon the claim that the affidavit filed before the justice of the peace, upon which he issued his process, did not charge an offense against Drolesbaugh, by reason of the fact that it did not expressly negative certain matters found in the statute.
The original charge in this case was brought under favor of Section 1426, General Code, which reads as follows:
“No person shall draw, set, place, locate, maintain or have in possession a pound net, trammel net, fyke net, set net, seine, fish trap, throw or hand line, * * * or any other device for catching fish, except a hook and line with bait or lure, in the inland fishing districts of this state, * * * but nothing herein shall prohibit an owner or person having the owner’s consent from taking or catching *176 a fish by a trot line, bob line, or by spearing, in that part of the stream bordering on or running through his own lands.” '
No claim seems to be made that there was anything in this statute ipso facto that needed to be negatived in order to state an offense. Reliance, however, is put upon Section 1433, General Code, which reads:
“No person shall take, catch, buy or sell minnows, except for bait, or ship ‘white bait,’ except alive, out of the state. In the inland waters of the state no minnows shall be taken or caught with a minnow seine exceeding four feet in depth and eight feet in length, and in Lake Erie fishing district no minnows shall be taken or caught with a minnow seine exceeding thirty feet in length.”
In the criminal case against Drolesbaugh the court of common pleas and the court of appeals both held that the affidavit was insufficient, and in the trial of the civil case that adjudication was adhered to. But in the case at bar this is not conclusive as against Brinkman.' He was not a party in the criminal cause, and, therefore, said action does not stand as res adjudicata against him, but is open here for full review.
If the affidavit did state an offense under the laws of Ohio, then there is an end to the entire controversy, in favor of Brinkman.
Numerous cases have been decided by this court as to the sufficiency of affidavits and indictments in cases involving statutes containing negative matter.
*177 One of the best considered cases of this character is that of Hale v. State, 58 Ohio St., 676, which was an indictment under the so-called medical act, which failed to aver that the defendant “was not a graduate of a medical college, or that he was not .a legal practitioner of medicine when the statute was enacted.” These two classes were made exceptions to the provisions of the act, and it was contended most strenuously in the lower courts that the indictment should have negatived these two classes.
This court very wisely held to the contrary. The language of the fourth paragraph of the syllabus is especially apropos here:
“Where an exception or proviso in a criminal, statute is a part of the description of the offence, it must be negatived by averment in the indictment in order to fully state the offence; but when its effect is merely to except specified acts or persons from the operation of the general prohibitory words of' the statute, the negative averment is unnecessary.”
In later years courts are not making a mockery of the ancient technical rules of pleading with regard to strictness and particularity. They follow and safeguard the constitutional rights of an accused to know “the nature of the accusation against him,” and that is sufficient.
If the acts complained of in this case were within the exception, the defendant’s rights were fully protected by permitting him to set them up in defense. These were matters as to which he had *178 particular and special knowledge, and no harm can come to him nor to the state by imposing upon him the duty of bringing himself within such exceptions. Had the legislature intended the exceptions mentioned to be made a part of the description of the offense, the presumption certainly is that it would have included them in the statute that created the offense.
The affidavit filed before the justice of the peace did state an offense, and, therefore, the process issued and served, by virtue -of which Drolesbaugh was imprisoned, does not furnish any ground whatsoever for complaint by him in the nature of false imprisonment.
But we are not disposed to determine this case solely upon the affidavit, though that is decisive.
Suppose the affidavit did not state an offense, and, therefore, was actually demurrable, or subject to motion, would the game warden then have been liable for false imprisonment?
This is a matter so vital to the state at large and all its political subdivisions, so vital to all of the police officers of township, city, county and state, that it deserves special consideration in this case.
Must the officer, when he receives a process from a court of competent jurisdiction, said process to be served and returned agreeable to the orders thereof, go back of the process and inquire, at his own peril, as to whether or not there was sufficient affidavit, or sufficient legal steps taken, preliminary to the issuing of the process; and if he judges wrong in that respect, or fails to make the inquiry, shall he be penalized by an action at law for dam *179 ages for false imprisonment? If that be sound law, then it is time that the people of Ohio, and every police officer of the state, should know the fact; and yet that is the holding of the courts below. That such a holding would absolutely paralyze the police administration of the state in the enforcement of its law is so obvious as to leave no argument.
Primarily, government is instituted to preserve law and order. A government without law and order is already upon the shoals of anarchy. Law and order are impossible without the hearty, vigilant and efficient cooperation of the administrative and executive officers of the state — its police authorities. It is expressly made the duty of these police officers to serve and enforce the processes of the various courts.
In discharging this public duty can it be consistently claimed that the officer of the law, in this case a game warden, shall be held to have violated some other duty that he owed to the, defendant, Drolesbaugh, in this case? Shall, in short, this private duty, which may be conveniently so called, be held of a higher order or paramount to the public duty that he owes to the community, to the state, or any of its political subdivisions, in the enforcement of the processes of its courts ?
Public policy forbids such a holding.
If the acts complained of be made an offense under the law, and the court have jurisdiction of such offense, and the process be regular upon its face, it becomes the officer's sworn duty to serve the same and make a return thereon; and, though *180 some one may be wronged thereby, the law has uniformly protected the magistrate in the issuing of the process against an action for false imprisonment. If the magistrate shall be protected, who is responsible for the issuing of the process, how can it be consistently claimed that his subordinate, the process-server of his court, shall be held liable for false imprisonment when he has done nothing more nor less than discharge his simple duty under the law ?
There is no “unlawful detention” where the law specially warrants the proceedings taken, though they may be irregular.
Of course if a magistrate issued a criminal warrant on an ordinary charge of slander against some man, which is not made an offense under the laws of the state of Ohio, and the officer served it and imprisoned some one, that would doubtless serve as a basis of action for false imprisonment, because there is no such offense; or if a magistrate issued a criminal warrant in a simple action for debt, and caused the police officer to serve the same. In both such cases it would be most obvious that the magistrate acted entirely beyond his jurisdiction. The magistrate is not protected in such case. Neither is the officer serving his process.
One of the earliest cases in Ohio dealing with the subject of false imprisonment is Taylor v. Alexander et al., 6 Ohio, 144. The syllabus reads as follows:
“2. In trespass against a constable and one of his posse, irregular process from a court having jurisdiction of the person and the subject, is a jus *181 tification, notwithstanding the preliminary steps to the process are irregular.”
Judge Wright, in delivering the opinion of the court, observes at page 147:
“The principle is well established, that executive officers, being obliged to execute process, are protected in the rightful discharge of their duty, provided the process issued from a court or magistrate having jurisdiction of the subject-matter. • And if the magistrate proceed unlawfully in issuing the process, he, and not the executive officer; will be liable for the injury. * * * The executive officer is justified, even when the process under which he acts is voidable for irregularity or mistake in issuing it.”
A later and well-considered case is Diehl v. Friester, 37 Ohio St., 473, 475, where an action of false imprisonment is discussed in these words:
“In trespass for false imprisonment, the gravamen is the unlawful act of the defendant. Case for malicious prosecution may be maintained where a proceeding is carried on maliciously and without probable cause. While an action for malicious prosecution may be maintained, notwithstanding the plaintiff was imprisoned upon a perfectly valid judgment or order, an action for false imprisonment cannot be maintained where the wrong complained of is imprisonment in accordance with the judgment or order of a court, unless it appear that such judgment or order is void. And this distinction is as important now as under the former practice. Spice v. Steinruck, 14 Ohio St. 213.”
*182 Throughout, the courts make the distinction between a void and voidable process. If the proceedings upon which the process is issued are merely irregular or defective for want of some allegation, but do constitute a bona fide attempt at regularity and validity, the mere fact of some defect does not make the affidavit and process void.
An examination of the cases of the various states discloses some confusion between the words “void” and “voidable,” as applied to the processes of a court. Of course a process issued beyond the jurisdiction of the court is clearly void. It is incurable, and any process not curable, that is, amendable, is not merely irregular, but absolutely void, and as against such processes, and the imprisonment resulting therefrom, the officer of course is not protected.
It may be urged that courts must not concern themselves with the consequences resulting from the application of the law. This doctrine is doubtless true as to a clear and complete legislative act. The question of the wisdom of the act resides solely in the judgment of the legislature, providing always that it is within their constitutional right to enact. But the doctrine of this case does not depend upon a legislative act, but upon a judicial act, or holding, and courts in declaring the law applicable to any given state of facts, must, of necessity, consider the consequences to the public at large as well as to the private individual involved in such holding.
Sir Edward Coke has well said:
*183 “Reason is the life of the law; nay the common law itself is nothing else but' reason. * * * the law which is perfection of reason.”
Results from the operation of the law are, therefore, of the highest consequence in determining whether or not the rule of law is’ supported by reason. The presumption is that a reasonable law will produce reasonable results, and that if the results are unreasonable the rule of law must be unreasonable, and, therefore, that the so-called law should be abrogated or amended so as to m'ake it accord with reason. If the law complained of be legislative, it is the duty of the legislature to make the needed change. If, however, the law complained of be judicial, then it is up to the judiciary to make the needed change.
It is impossible to refute or reconcile all the holdings of the different courts upon these questions. Suffice it to say that what is here set forth is thoroughly in accord with the wholesome and sound public policy in favor of law and law enforcement, and is absolutely essential to a proper encouragement and protection of all officers of the law, and the general public, who are the beneficiaries of its enforcement.
The judgments of the courts below are reversed.

Judgments reversed. ■

Nichols, C. J., Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.